**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ORGAN RECOVERY SYSTEMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 4041** |
| | ) | |
| **PRESERVATION SOLUTIONS, INC.,** | ) | |
| **GARY L. SWANSON, BRIDGE TO** | ) | |
| **LIFE, LTD., and BTL SOLUTIONS,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Organ Recovery Systems, Inc. (ORS) has sued Preservation Solutions, Inc., its president Gary L. Swanson, Bridge to Life, Ltd., and BTL Solutions, LLC, for breach of contract, breach of fiduciary duty, constructive trust, deceptive trade practices, false advertising and unfair competition under the Lanham Act, and civil conspiracy. Both Preservation Solutions and Swanson (collectively PSI) and Bridge to Life and BTL Solutions (collectively BTL) have moved to dismiss ORS's claims. For the reasons stated below, the Court grants each motion in part and denies each motion in part.

**Background**

The Court accepts the allegations in ORS's amended complaint as true for purposes of resolving the motions to dismiss. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

ORS provides medical devices and chemicals for kidney transplants. It sells two

different solutions that are used to preserve kidneys. Only one, the KPS-1 perfusion

solution, appears to be at issue in this suit. KPS-1 is used by hooking a perfusion

machine to the kidney that has been removed from a donor. The machine pumps KPS-

1 through the kidney to provide it with nutrients and oxygen. KPS-1 is based on a freely

available recipe developed by the University of Wisconsin, so ORS attempted to

differentiate its product by improving the solution's packaging and shelf life.

ORS entered into a contract with PSI to have PSI assist it in testing,

manufacturing, and obtaining regulatory approval for KPS-1. The contract was divided

into projects. Three projects involved KPS-1, and one of them was to research

modifications to the packaging of KPS and improvements to its shelf life. The contract

prohibited PSI from using or disclosing ORS's confidential information, a term the

contract defined broadly.

In January 2002, ORS received FDA approval to sell KPS-1. Around the same

time, it began working with PSI to modify the packaging of KPS-1 so that it could be

stored at room temperature and would last longer. At the time, all kidney solutions had

to be refrigerated during transportation and storage. Through its work with PSI, ORS

improved KPS-1's packaging so that the solution could be stored at room temperature

for one year.

PSI acquired ORS's confidential information through their work together. ORS

claims that PSI used the information it acquired to market two kidney solutions of its

own. Although anyone could make the solutions, ORS states that PSI used ORS's

confidential information to make its own solutions, MaPerSol and CoStorSol, storable

without refrigeration. ORS also contends that PSI used ORS's confidential information

2

in the documents PSI submitted to the FDA seeking approval of its solutions.

ORS also claims that PSI gave ORS's confidential information to BTL. BTL sells two kidney solutions, Machine Perfusion Solution-Belzer UW and Belzer UW Cold Storage Solution, and PSI manufactures both solutions for BTL. Swanson, the president of PSI, owns an equity stake in BTL. BTL advertises that its solutions can be stored at room temperature and have long shelf lives, attributes that ORS claims BTL developed by using ORS's confidential information. In press releases and solicitations to customers, BTL has claimed that it was the first company to make room-temperature solutions and that it made room temperature storage possible. ORS contends, however, that it, not BTL, was the first company to develop room temperature kidney solutions through its research with PSI, and that BTL subsequently misappropriated confidential information from that research.

**Discussion**

Both PSI and BTL have moved to dismiss ORS's amended complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). ORS "has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Id.*

ORS's makes six claims against defendants: (1) PSI breached the contract between it and ORS; (2) PSI breached the duty of loyalty it owed ORS; (3) the Court should impose a constructive trust; (4) all defendants violated the Uniform Deceptive

3

Trade Practices Act (UDTPA); (5) BTL violated the Lanham Act through false advertising and unfair competition; and (6) all defendants engaged in a civil conspiracy.

## A.    Breach of contract claim

ORS argues that PSI breached the contract between them when PSI used ORS's confidential information to apply for approval for its own kidney solutions and to manufacture solutions for BTL.  PSI argues that ORS has not sufficiently pleaded the claim because it provides a "laundry list" allegation, that ORS's own exhibits rebut the claim, and that its CoStorSol solution is not covered by the contract.

### 1.    Sufficiency of the allegations

PSI argues that ORS's breach of contract claim does not plead sufficient facts to show that ORS actually had confidential information or what confidential information PSI took.  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  PSI argues that the very broad statements in ORS's complaint are conclusory and do not provide fair notice of the claim to PSI.  *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (complaint must provide defendant notice so that it can file an answer).

ORS's complaint states that PSI had access to "Confidential Information related to the KPS-1 packaging design, know-how, data, formulas, product testing and studies, product drawings, specifications, schematics, samples, proto-types, regulatory and quality control files, vendor lists, and pricing information."  Am. Compl. ¶ 35.  Although this particular paragraph of the complaint is very broadly worded, when read as a whole

4

the complaint more specifically identifies the confidential information that ORS believes PSI impermissibly acquired and used. ORS states that it worked with PSI to develop new packaging and an extended shelf life for KPS-1. *Id.* ¶ 30. It also says that as a result of the research KPS-1 packaging was completely redeveloped and that there was no more need to refrigerate KPS-1. *Id.* ¶ 32. ORS then claims that PSI took this information and developed packaging for itself and BTL, in particular, making use of results from tests and studies of the new packaging and self life. *Id.* ¶ 39, 45. ORS also states that PSI used specific confidential design documents, vendor lists, and product specifications from their joint project to improve KPS-1's packaging. *Id.* ¶ 46. ORS further alleges that PSI used all of this information to obtain FDA approval for its own products and manufacture solutions for BTL. *Id.* ¶¶ 43, 46, 51–52.

The allegations in the complaint are sufficient to make the breach of contract claim plausible and provide fair notice of the claim to PSI. ORS did not merely provide a list of all possible sources of confidential information. In addition, it described the particular project from which it alleges PSI took confidential information, specifically, the project to improve the packaging and shelf life of KPS-1. ORS also specified what that information was: test and study results as well as design documents and product specifications for the packaging. ORS does not need to be any more specific at this time. *See Fire 'Em Up, Inc. v. Technocarb Equipment (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011) (stating that claims are dismissed for lack of specificity in the pleadings only in extreme cases and refusing to dismiss a complaint that claimed its trade secrets included customer lists, supplier lists, business partner lists, combinations

of material used to create its product, financial data, marketing plans, and advertising strategies); *Lincoln Park Sav. Bank v. Binetti*, No. 10 CV 5083, 2011 WL 249461, at * 2 (N.D. Ill. Jan. 26, 2011) (refusing to dismiss complaint that alleged defendants had gotten access to various trade secret information contained in a loan origination system to which they had access).

PSI cites two cases in support of its argument that ORS's complaint should be dismissed. In *Medafor, Inc. v. Starch Medical Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009), the court dismissed part of a complaint that alleged that the trade secrets misappropriated were "business methodologies, formulas, devices, and compilations of information, including suppliers and customers" but provided no further description of what confidential information was taken. *Id.* at * 1. ORS, by contrast, has specified the research and product to which the alleged confidential information relates. In *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001), the court refused to dismiss a complaint that referenced two specific technologies that were trade secrets arising from three research projects, even though the complaint also included general allegations. *Id.* at 920–21. Like the plaintiff in that case, ORS has identified a particular research project and the specific types of confidential information.

PSI also argues that ORS's complaint alleges too many facts on information and belief. It states that "[a]llegations based exclusively on information and belief are insufficient unless the facts are inaccessible to the pleader, and there is a reasonable basis to suspect that the facts are true." *MaClean-Fogg Co. v. Edge Composites,*

*L.L.C.*, No. 08 C 6367, 2009 WL 1010426, at *6 (N.D. Ill. Apr. 14, 2009). Unlike in

*MaClean-Fogg*, however, ORS has stated reasonable grounds to suspect that the facts

pleaded on information and belief are true. It developed a solution that could be stored

at room temperature before anyone else had done so. Then PSI, which had worked

with ORS to develop the solution, obtained approval for its own room temperature

solutions. BTL, which used PSI to manufacture its solutions and which was partially

owned by PSI's president, then began marketing its own room temperature solution.

ORS has a reasonable basis to believe that defendants took its confidential information

and used it to manufacture and obtain FDA approval for their solutions.

###    2.    ORS's exhibits

PSI argues that the Court must dismiss ORS's claim because the exhibits

attached to the complaint counter its allegations. It contends that the exhibits, which

are applications submitted to the FDA for PSI's MaPerSol and CoStorSol solutions,

demonstrate that there is nothing special about the bags in which the solution is

packaged and thus PSI cannot have taken any confidential information from ORS

relating to the packaging of its KPS-1 solution. Compl., Ex. B at 2 & Ex. C at 2.

Even if all of the kidney solutions are stored in standard, readily-available bags,

however, PSI still could have taken confidential information from ORS. ORS claims

that PSI took the results of tests and studies that established that the kidney solutions

could be stored at room temperature and that PSI used the results to obtain FDA

approval for its solutions. ORS claims not only that PSI took information regarding the

type of bag in which the kidney solutions could be stored, but also the information that

they could be stored in those bags at room temperature and for long periods of time.

Even though the CoStorSol application says that the packaging of the solution has not

changed, PSI still could breach its contract by taking information from ORS showing

that the solution would last one year at room temperature.

### 3. CoStorSol

PSI contends that ORS's claim should be dismissed because the contract

between it and ORS covers only work done on KPS-1, not PSI's CoStorSol product.

This argument makes no sense. ORS claims that PSI took confidential information

from the KPS-1 projects and applied it in developing its own products, including

CoStorSol. It does not matter that the contract does not mention CoStorSol by name.

The Court denies PSI's motion to dismiss the breach of contract claim.

## B. Breach of duty of loyalty

ORS contends that PSI owed it a duty of loyalty and breached that duty by using

ORS's confidential information to obtain FDA approval for its own solutions and to

manufacture BTL's solutions. PSI argues that it owed no duty of loyalty to ORS.

Under Illinois law, parties to a contract generally do not owe each other fiduciary

duties. *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies,*

*Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). ORS acknowledges this rule and concedes

that PSI did not owe it fiduciary duties as a matter of law. *See Yokel v. Hite*, 348 Ill.

App. 3d 703, 708, 809 N.E.2d 721, 726 (2004) (joint venturers, unlike normal parties to

a contract, are fiduciaries as a matter of law). ORS nevertheless argues that the

special circumstances of its relationship with PSI created fiduciary duties.

8

> The factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health and mental condition, the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to and reposed faith and confidence in the dominant party.

*In re Estate of Long*, 311 Ill. App. 3d 959, 964, 726 N.E.2d 187, 191 (2000). A fiduciary "relationship only goes to a situation where one party, because of some close relationship, relies very heavily on the judgment of another." *Carey Elec. Contracting, Inc. v. First Nat. Bank of Elgin*, 74 Ill. App. 3d 233, 238, 392 N.E.2d 759, 763–64 (1979). "Parties to a business agreement . . . are presumed capable of guarding their own interests." *Yokel*, 348 Ill. App. 3d at 706, 809 N.E.2d at 725.

ORS has not alleged anything that makes plausible its claim that PSI owed it fiduciary duties. It states only that the two companies had a lengthy business relationship and that it gave PSI significant amounts of confidential information. But the two parties were sophisticated corporations who did business on the basis of a written contract. The fact that ORS trusted PSI to abide by their contract does not create a fiduciary relationship. *Id.* at 707, 809 N.E.2d at 725. The Court dismisses this claim.

## C.    Constructive trust

Defendants argue that a constructive trust is only a remedy and not a separate cause of action. ORS concedes this and says that it will agree to submit an amended complaint removing the constructive trust count. It states, however, that it will continue to seek the imposition of a constructive trust as a remedy on its other claims. The Court dismisses this as a separate claim.

**D.    Deceptive trade practices**

ORS claims that all defendants engaged in deceptive trade practices in violation

of 815 ILCS 510/2.  Defendants contend that the claim is preempted by the federal

Food, Drug, and Cosmetic Act (FDCA) and the Illinois Trade Secrets Act (ITSA) and

that ORS has not sufficiently alleged any deceptive trade practices.

**1.    Food, Drug, and Cosmetic Act preemption**

Claims by an individual plaintiff that a defendant fraudulently obtained approval

from the FDA are preempted by the FDCA.  *Buckman Co. v. Plaintiffs' Legal Comm.*,

531 U.S. 341, 343 (2001).  A plaintiff cannot use state tort law to police the submissions

that others make to the FDA.  *Id.* at 348.  A plaintiff can assert a claim based on

violation of a state tort law duty even if the facts involve submissions to the FDA, but a

plaintiff cannot do so based solely on a violation of the requirements of the FDCA.  *Id.*

at 351–53; *Bausch v. Stryker Corp.*, 630 F.3d 546, 557 (7th Cir. 2010).

Defendants argue that ORS's deceptive trade practices claim is preempted by

the FDCA because it relies on the allegation that defendants took ORS's data and

fraudulently submitted it to the FDA when seeking approval of their own solutions.  The

section of ORS complaint that sets out this claim does state that defendants took

ORS's confidential information and submitted it to the FDA.  But the complaint as a

whole reflects that the deceptive trade practices that ORS alleges are that defendants

disparaged its products and misrepresented the quality of their own.

ORS alleges that BTL falsely claimed that it was the first company to gain FDA

approval for a room temperature kidney solution and that it made FDA approval of room

10

temperature storage possible. Am. Compl. ¶ 60, 62, 64. ORS claims that BTL has not ever received FDA approval for a room temperature storage solution and that ORS was the first to receive such approval. This is not a claim that defendants committed fraud on the FDA. The Court can appropriately determine whether BTL's solution actually has been approved for room temperature storage and whether it was the first solution approved. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1226 & n.15 (11th Cir. 2008) (court could determine whether statements that a product had been approved by FDA were literally false); *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 939 (8th Cir. 2005) (court could determine whether FDA had approved a product even if it could not determine whether the FDA should approve a product). For these reasons, the Court concludes that this claim is not preempted by the FDCA.

### 2.     Illinois Trade Secrets Act preemption

The ITSA bars all other claims alleging misappropriation of trade secrets that are not based on a contract. 765 ILCS 1065/8(a). Defendants argue that the ITSA preempts ORS's deceptive trade practices claim because it is based on the allegation that defendants took confidential information from ORS.

The ITSA preemption provision only bars claims "when they rest on the conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404–05 (7th Cir. 2005). A plaintiff's claims are not preempted if they "would be sound even if the [information] were a public record." *Id.* at 405. "The Court thus reviews the claims . . . to determine whether they are dependent on the misappropriation of a trade secret." *C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, No. 05 C 3401,

11

2005 WL 3077998, at *6 (N.D. Ill. Nov. 16, 2005).

As discussed above, ORS's deceptive trade practices claim is that the defendants disparaged its products and lied about their own. This claim is not based on the misappropriation of any trade secrets or confidential information. Even if ORS did not allege that PSI took confidential information, its claim that the defendants engaged in deceptive trade practices could still stand. The ITSA does not preempt this claim.

### 3.    Sufficiency of the complaint

Defendants contend that ORS's claim is insufficient because it does not allege that defendants made any statements disparaging ORS products. It is a deceptive trade practice to disparage the goods of another using false or misleading statements. 815 ILCS 510/2(a)(8). The statements, however, must specifically disparage a product or service and not just attack the reputation of the business or the person selling it. *Allcare, Inc. v. Bork*, 176 Ill. App. 3d 993, 999–1000, 531 N.E.2d 1033, 1037–38 (1988) (alleging that a business committed medicare fraud did not disparage that business's products); *see Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 274 (7th Cir. 1983) (distinguishing between disparaging a product and defaming a business).

ORS has not alleged facts sufficient to give rise to a claim that defendants disparaged its products. It does not allege that PSI or BTL ever made statements indicating that ORS's products were inferior to their own. Rather, it states only that BTL falsely claimed that its solutions were the first to be storable at room temperature and that BTL had made room temperature solutions possible. ORS does allege that BTL

12

told potential customers that BTL ought to sue ORS for claiming that it had developed room temperature solutions when BTL was the first to market such solutions. Compl. ¶¶ 59, 61. But threatening to sue a company does not amount to disparagement of its products. *See Roper Whitney of Rockford, Inc. v. TAAG Machinery Co.*, No. 99 C 50032, 2003 WL 57029, at *2 (N.D. Ill. Jan. 7, 2003). ORS states that BTL made "false or disparaging remarks" to ORS customers, but the only details that it provides involve BTL lying about BTL products. Compl. ¶¶ 59–60. In particular, it does not allege that BTL said anything negative about ORS products, as opposed to merely claiming that its own products were superior.

ORS has, however, sufficiently alleged that defendants committed other deceptive trade practices. It is a deceptive trade practice to "represent[ ] that goods or services are of a particular standard, quality or grade" if they are not or to "engage[ ] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7), (12). Defendants do not argue that ORS has insufficiently alleged this type of deceptive trade practice. As noted above, ORS has alleged that BTL made false statements about the quality of its products directly to customers, in press releases, and in advertising.

ORS has sufficiently alleged a deceptive trade practices claim based on defendants lying about their products and creating a likelihood of confusing customers for kidney solutions. The Court denies defendants' motions to dismiss this claim.

## E.     False advertising and unfair competition

ORS claims that BTL has made false and misleading statements in its

13

advertising in violation of the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). BTL argues that ORS's claim is preempted by the FDCA and the ITSA and that ORS's claim relies on a distortion of its exhibits.

### 1. FDCA preemption

BTL argues that ORS's claim is preempted because the claim focuses on whether the FDA properly approved BTL's solutions. The complaint makes clear, however, that ORS's false advertising claim is based on BTL advertisements stating that it developed the first room temperature kidney solution and was the first company to gain FDA approval. Compl. ¶ 95. ORS also alleges that BTL made other false statements in its advertising, such as the statement that BTL made room temperature storage of kidney solutions possible. *Id.* ¶ 62. These claims are unrelated to whether the FDA appropriately approved the BTL solutions, and they do not allege fraud on the FDA. Like the deceptive trade practices claim discussed above, they are not preempted by the FDCA. *See N. Am. Med. Corp.*, 522 F.3d at 1226 n.15 (Lanham Act claim that device had not been approved by FDA was permissible and did not intrude on FDA areas of expertise).

BTL cites *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), in support of its contention that ORS's claim is preempted. In *Mylan Labs*, the Fourth Circuit stated that a plaintiff could not claim that the mere act of placing a drug on the market falsely advertised that it had been approved by the FDA. *Id.* at 1139. The court held that this was an inappropriate attempt to use the Lanham Act to enforce the FDCA. *Id.* at 1139. The court did not, however, rule that there could never be false advertising claims

14

related to items the FDA had approved.  In fact, it held that the plaintiff had sufficiently alleged a false advertising claim when it claimed that defendant's drug packaging stated that it was bioequivalent to the plaintiff's drugs.  *Id.* at 1138.  ORS's claim is not like the one barred by the court in *Mylan*; it does not depend on the allegation that simply making an item available for sale is an advertisement or that BTL has failed to disclose that its product was not approved.  *See Braintree Labs., Inc. v. Nephro-Tech, Inc.*, No. 96-2459-JWL, 1997 WL 94237, *6 (D. Kan. Feb. 26, 1997).

ORS's claim also does not require the Court "to usurp the FDA's responsibility for interpreting and enforcing the agency's regulations."  *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939, 946 (E.D. Wis. 2008); *see Rita Med. Sys., Inc. v. Resect Med., Inc.*, No. C 05-03291 WHA, 2006 WL 2038328, at *3 (N.D. Cal. July 17, 2006) ("the Lanham Act cannot be used as a circuitous route to challenge determinations of the FDA").  BTL argues that only the FDA can determine whether BTL made room temperature storage of solutions possible, which is the subject of ORS's claim in this case.  But ORS can prove its claim with evidence demonstrating that PSI and BTL took ORS's confidential information and that BTL never did any independent research to develop room temperature solutions.  Such evidence, which does not touch upon the FDA approval process, would demonstrate that BTL's statement was false.

### 2.    ITSA preemption

BTL claims that ORS's false advertising claim is also preempted by the ITSA. This argument fails for the same reason as it did with regard to the deceptive trade

15

practices claim discussed above.  ORS's claim that BTL falsely advertised that it was the first to gain approval for a room temperature solution and that it made such solutions possible does not depend on confidential information or trade secrets.

### 3.      ORS's exhibits

BTL finally claims that ORS misquotes and distorts the content of its exhibits when it alleges that BTL asserted that it was the first to develop a room temperature storage solution.

ORS presents as an exhibit pages from BTL's website, which ORS claims presents BTL's solution as the first that allows room temperature storage.  Compl. ¶ 54. The exhibit ORS presents, however, does not include any statement by BTL that its solution was the first.  The only use of the word "first" is a statement that room temperature storage is the first improvement that BTL has developed for its particular product.  Compl., Ex. E.  ORS does present another exhibit, a BTL press release which states that "BTL was the first company to gain FDA approval for the room-temperature storage of cold storage solutions."  Compl., Ex. G.

ORS's exhibit of three pages from BTL's website does not support its allegation that BTL states on its website that it was the first company to gain FDA approval.  *See Griffin v. Runyon*, No. 96 C 4117, 1997 WL 222944, at *5 (N.D. Ill. Apr. 30, 1997) (exhibit that contradicts complaint controls over complaint).  But the exhibit does not mean that BTL does not make such a claim elsewhere on the website, and the BTL press release is evidence that BTL has made such claims in places other than on its website.

For these reasons, the Court denies BTL's motion to dismiss on this claim.

16

F.      **Civil conspiracy**

ORS's final claim is that the defendants conspired to take and misuse its confidential information.  Defendants argue, among other things, that this claim is preempted by the ITSA.  As discussed above, the Court must consider whether ORS would still have a claim if all of the information it alleges the defendants took was in the public record.  *See Hecny*, 430 F.3d at 404–05.  When a plaintiff claims only that a defendant has misused its secret information, "unless defendants misappropriated a (statutory) trade secret, they did no legal wrong."  *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992).

"Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means."  *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62, 645 N.E.2d 888, 894 (1994).  ORS's conspiracy claim is based on the allegation that the defendants conspired to take ORS's property, the confidential information.  Because ORS's claim depends on the "existence of competitively significant secret information," it is preempted by the ITSA.  *Hecny*, 430 F.3d at 405 (internal quotation marks omitted).

The Court dismisses ORS's conspiracy claim, because it does not include allegations of other bad acts by the defendants beyond the taking of confidential information.  *Cf. EBI Holdings, Inc. v. Butler*, No. 07-3259, 2009 WL 400634, at *4–6 (C.D. Ill. Feb. 17, 2009) (claims not preempted when they involved trade secrets but also other bad acts such as misusing employer's property and competing with employer); *CardioNet, Inc. v. LifeWatch Corp.*, No. 07 C 6625, 2008 WL 567223, at *3

17

(N.D. Ill. Feb. 27, 2008) (conversion claim preempted to the extent that it alleged conversion of "confidential, proprietary, and trade secret information" but not to the extent that it alleged conversion of physical items).

### Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss [docket nos. 38, 40] in part and denies them in part. Specifically, the Court dismisses ORS's breach of fiduciary duty, constructive trust, and civil conspiracy claims (Counts 2, 3, and 6) but otherwise denies the motion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  January 13, 2012